FtrLD, J.
The question here presented is whether certain portions of county-owned airport property, consisting of land and hangars leased to private parties, are exempt from town taxation as property “held for a public use” under section 406, subdivision 1, of the Real Property Tax Law.
The Westchester County Airport, constructed in 1942 by the Federal Government on property purchased by the County of Westchester, was turned over to the county in 1944 to be operated as a public airport. By an agreement executed in 1945, the county granted a lease to a private company for the operation of the entire airport as a public airport for the benefit of the public and the County of Westchester. The two hangars involved on this appeal, denominated “ D ” and “ E ”, were constructed by the operating corporation in 1953 and 1958 respectively. The rent payable by the corporation to the county was increased upon completion of each hangar and, in addition, the corporation agreed to pay to the county a percentage of the rentals received by it upon subleasing the hangars.
Soon after its construction, Hangar “ D ” was leased by the operating corporation to four companies for their private and exclusive use for periods ranging, with options, from about 10 to 15 years. These companies, in turn, sublet, for varying lengths of time, all or part of their areas to other companies, virtually all of which have used the space to store and maintain their privately owned and utilized aircraft. Hangar “ E ” was leased by the operating corporation to a private company under a long-term agreement providing that the lessee or any sub-lessee would not use the hangar “ for any purpose other than the storage and maintenance of private, corporate aircraft owned or operated * * * to provide transportation of its officers, employees and guests”. Thereafter, the hangar was subleased for the full period to other private corporations. Pursuant to the above agreement, Hangar “ E ”, like Hangar “ D ”, has been used almost exclusively to house and service aircraft belonging to these several corporations.
*262 In February of 1960, the town brought an notion to have Hangar “ E ”, and the parcel of land upon which it stands, declared subject to taxation on the ground that it was being devoted to private rather than public use. The county, by way of defense, contended that Hangar “ E ”, as well as its other hangars, was used only for “ aviation purposes and other purposes required for or necessary to the efficient and successful operation of the said Westchester County Airport * * * as a public airport,” within the terms of subdivision 5 of section 352 of the General Municipal Law.[1] And, by way of counterclaim, the county sought a judgment declaring that all the airport property within the Town of Harrison — Hangars “ D ” and “ E ” in particular and a third hangar, “ B ”, as well — was exempt from taxation. The trial court denied a motion by the town for summary judgment and dismissed its complaint. The Appellate Division, although agreeing that the town was not entitled to summary judgment, reversed the judgment dismissing its complaint and directed that a trial be held; it was the Appellate Division’s conclusion that issues of fact were presented as to whether the hangars were being put to the essential public use.
Meanwhile, a second action was commenced by the town in August of 1960, seeking to have Hangar “ D ” and the land upon which it is situated declared taxable for the years 1954 through 1958. In this action, the county reiterated the defenses it had interposed in the first action. Upon the opening of the trial ordered by the Appellate Division in the first action, the parties agreed to consolidate the two actions. Following a trial, the court decided, and the decision was affirmed by the Appellate Division, that (1) Hangars “D” and “ E ”, and the land appurtenant thereto, are subject to taxation for the years 1954 and following and (2) Hangar “ B ” is exempt from taxation. Only the tax status of Hangars “ D ” and “ E ” is before us on this appeal.
*263 Subdivision 1 of section 406 of the Real Property Tax Law provides that property owned by a municipal corporation within its corporate limits is exempt from taxation only if “ held for a public use Although what comprises “ a public use ” within the meaning of the statute “ has never been defined with exactitude ” and “must necessarily depend upon the peculiar circumstances of each case ”, it has been said, and most appropriately, that “ Held for a public use, in this connection, means that the property should be occupied, employed, or availed of, by and for the benefit of the community at large, and implies a possession, occupation and enjoyment by the public, or by public agencies.” (County of Herkimer v. Village of Herkimer, 251 App. Div. 126, 128, affd. 279 N. Y. 560.) It follows, therefore, that those portions of the land owned by a municipality which are employed in the actual operation of an airport for the general use of its inhabitants must be deemed to be “ held for a public use ’ ’ and, accordingly, exempted from taxation.
Although such exempt property would normally include not only the land which is used for runways, ticket offices, waiting rooms and the like but also the land upon which are erected hangars to house and maintain the aircraft serving the public (see Moon Twp. Appeal, 387 Pa. 144, 148), there can be no doubt that the courts below were correct in denying such tax exempt status to Hangars “ D ” and “ E ” for the reason that they are not being employed for a public use. As the trial court in this case aptly noted, both hangars are occupied by private corporations, either as lessees or sublessees, “under long-term leases which insure to them complete dominion over the premises demised to them ”. The hangars were not leased, nor are they utilized, for the purpose of providing storage' or maintenance area for aircraft serving the general public or for any other purpose redounding to the benefit or advantage of the general community. On the contrary, they are being devoted to servicing the private aircraft of their corporate occupants and, indeed, the occupancy of Hangar “ E ” is expressly limited by the operative leases to such a purpose. These two factors — the exclusive, long-term control of the premises by private corporations and the use of the premises by them solely for the storage and maintenance of aircraft serving only their own personnel and guests — warrant the conclusion that the hangars, *264 and the land upon which they are located, are not “held for a public use ”.
To support its contrary contention, the county points out that “ the space in the hangars is available to anyone for legitimate airport purposes upon request provided the space is available ” and that, in fact, such space has occasionally been made available, at least during inclement weather, to other aircraft, including those belonging to the one regularly scheduled public carrier airline which uses the airport facilities. This occasional public use, however, being no more than incidental to the private use of the hangars and, beyond that, entirely dependent upon the pleasure and convenience of the corporate bodies which have exclusive control of those premises, does not qualify the property for tax exemption.
The circumstance that rentals from municipally owned property provide needed revenue for the governmental body, enabling it to carry out its public functions, is not sufficient to render the use of the property public; the property itself must be devoted to a public use. (See County of Herkimer v. Village of Herkimer, 251 App. Div. 126, 129, affd. 279 N. Y. 560, supra; Bush Term. Co. v. City of New York, 282 N. Y. 306, 321; Moonachie v. Port of N. Y. Auth., 38 N. J. 414, 426-427; Moon Twp. Appeal, 387 Pa. 144, 149, supra.) Although the two hangars here involved may be employed by the county to obtain revenue, perhaps to help defray the expense of operating the public airport, it is clear that they are not being devoted to a public use so as to entitle them to tax exemption. As the high court of Pennsylvania declared in a case also involving the taxability of portions of a county airport, “there is * * * no doubt
but that property, even though owned by a body ordinarily tax exempt, is taxable if used by it for commercial purposes, or if rented to a lessee for a purely business enterprise and not a public use; this is true even though the rentals or other proceeds from the property are devoted to the tax exempt activities of the lessor ”. (Moon Twp. Appeal, 387 Pa., at p. 149.)
Nor is the county’s position advanced by its reliance on section 352, subdivision 5, of the General Municipal Law. That section, designed simply to remove any doubt as to the county’s authority to arrange for the operation of an airport by lease or *265 other contract, was not intended to change the criterion for determining the tax status of the land so owned and leased, namely, that the property he [1] ‘ held for a public use” (Real Property Tax Law, § 406, subd. 1).
Likewise without merit is the county’s contention based on such cases as Courtesy Sandwich Shop v. Port of N. Y. Auth. (12 N Y 2d 379) and Matter of New York City Housing Auth. v. Muller (270 N. Y. 333). The argument is, in effect, that, since the Legislature has there been held empowered to authorize the condemnation of property for a “ public use ” even though some of the property is to be leased to private parties, the same interpretation of the standard of “public use ” must necessarily be applied in determining the tax status of such property.
While the argument may have superficial appeal, it cannot withstand analysis since the two situations are completely disparate as respects both the policy considerations and the issues involved. The policy considerations which prompt or move the Legislature to authorize the acquisition and operation of a project, or to sanction condemnation to bring it into being, may be altogether different from those affecting its decision as to whether the property so acquired or operated shall be free from tax. The Legislature may quite properly conclude that hangars for private parties are essential to the economy and in the public interest and that, unless a county or other public airport is permitted to provide such facilities, the use thereby afforded probably could not be made available or exist at all. But it by no means follows that the Legislature would conclude that the parties using the private hangars should not bear their proper share of the tax burden, that that entire-burden should be thrown on the residents and other taxpayers of the town. (Cf. County of Herkimer v. Village of Herkimer, 251 App. Div. 126,127, affd. 279 N. Y. 560, supra.)
In the condemnation cases referred to, the question before the courts was the particular one whether the Legislature’s resolve to extend eminent domain powers to the project there under consideration offended against constitutional provisions. (See Berman v. Parker, 348 U. S. 26, 32; Denihan Enterprises v. O’Dwyer, 302 N. Y. 451, 457-458; Courtesy Sandwich Shop v. *266 Port of N. Y. Auth., 12 N Y 2d 379, 388, supra.) In the tax exemption case before us, the question Is not whether the Legislature can exempt such property as the hangars — undoubtedly it can (see People ex rel. Buffalo & Ft. Erie Public Bridge Auth. v. Davis, 277 N. Y. 292) —but whether it has done so, whether, in other words, in enacting subdivision 1 of section 406 of the Eeal Property Tax Law, the Legislature intended by the general words, ‘ ‘ held for a public use ’ ’, to include in the exempt class property, such as hangars, used exclusively for private purposes by private parties. It certainly may not be assumed that the Legislature, in granting Westchester County the power to maintain this airport, intended to preclude consideration of the entirely separate and distinct question whether hangars so used should be exempt from town taxation. In the Bush Terminal case (282 N. Y. 306, supra), this court did, it is true, hold that property acquired for a public purpose, part of which was to be leased for private use, was entitled to a measure of tax exemption but it there appeared that the Legislature’s attention had been specifically directed to the matter of tax exemption, and the declaration of the exempt status of the property involved served, in the judgment of the court, to carry out the legislative design.
In sum, then, since the subject property has been committed to the exclusive control of private parties under long-term agreements and is being employed solely for their private purposes, rather than in a manner benefiting the community at large, such property must be deemed to be held for other than “ a public use ” within the sense of the Eeal Property Tax Law. The two hangars here involved and the land on which they stand are, therefore, subject to taxation by the plaintiff town.
The judgment appealed from should be affirmed, without costs.
Chief Judge Desmond and Judges Dye, Van Voobhis, Burke, Poster and Soilbppi concur.
Judgment affirmed.

. A defense of res judicata — based on a 1951 judgment that the airport property was exempt from taxation by the plaintiff town (County of Westchester v. Toum of Harrison, 201 Mise. 211) — was also interposed by the county. The trial court subsequently, and quite correctly, rejected this defense on the grounds that (1) Hangars “D” and “E” were not in existence at the time of that adjudication and (2) the prior determination concerned the airport’s tax status for earlier years than here involved.