(761 P.2d 1261)
No. 61,829

SALINA AIRPORT AUTHORITY, *Appellant,* v. BOARD OF TAX APPEALS,
STATE OF KANSAS, *Appellee.*

Opinion filed
September 30, 1988.

*L.O. Bengtson,* of Clark, Mize & Linville, Chartered, of Salina, for the appellant.

*Constance M. Achterberg,* of Achterberg & Neustrom, of Salina, for the appellee.

*Joe Allen Lang,* assistant city attorney, and *Thomas R. Powell,* city attorney, for *amicus curiae* Wichita Airport Authority.

*Vincent L. Bogart* and *Paul F. Good,* of Klenda, Mitchell, Austerman & Zuercher, of Wichita, for *amicus curiae* Board of County Commissioners of Sedgwick County, Kansas.

Before DAVIS, P.J., BRISCOE, J., and DAVID S. KNUDSON, District Judge, assigned.

KNUDSON, J.: This is an appeal from a judgment of the Shawnee County District Court affirming an order of the Board of Tax Appeals (BOTA). BOTA concluded in its order that certain real estate owned by the Salina Airport Authority (Authority) was not exempt from the payment of ad valorem taxes. The Authority has made a timely appeal.

We note at the outset BOTA is designated as the appellee. Under K.S.A. 1987 Supp. 74-2433, BOTA cannot sue or be sued. *Joseph v. McNeive,* 215 Kan. 270, 524 P.2d 765 (1974). The real party in interest that should have been designated as the appellee is the Board of County Commissioners of Saline County (Board). This inappropriate designation does not affect our jurisdiction but is a matter that we believe should be noted by counsel for future reference.

There are two general issues on appeal. The first issue is whether certain property owned by the Authority is exempt from ad valorem taxes under K.S.A. 1987 Supp. 79-201a *Second.* The second issue is whether BOTA acted within the scope of its authority when it ordered the Saline County Appraiser to submit a report as to all other property owned by the Authority and the uses being made of the property.

We are satisfied that there is no material dispute between the parties as to factual matters in this case. This point is significant as the question then becomes one of law as to whether the subject property is exempt from taxation. *Board of Johnson County Comm'rs v. St. Joseph Hosp.,* 241 Kan. 613, 614, 738 P.2d 454 (1987).

In 1964, the federal government closed Schilling Air Force Base, which was located adjacent to the city of Salina. Under the

Surplus Property and Public Airport Authority Act, K.S.A. 27-315 through 27-326, the city of Salina established the Authority and converted the deactivated base into a municipally owned airport and industrial complex.

On November 29, 1984, the Authority purchased the subject real estate and buildings located upon the property. This real estate is located approximately two miles east of the airport and the Authority's other property. The acquisition was financed from a three-mill tax levy in calendar years 1982 and 1983. The Authority purchased the real estate to induce industries to locate in Salina and to generate revenue for operation of the airport. In December of 1984, the Authority leased a portion of the real estate containing a 55,000 square foot building to Keystone Railway Equipment Company. In September of 1985, it leased the balance of the property containing a 93,000 square foot building to ElDorado Motor Company. Both Keystone and El-Dorado are private for-profit corporations engaged strictly in nongovernmental commercial ventures. Rental income from both leases was placed in the Authority's general operating fund and used for maintenance and operation of the airport. With this background, we turn to our discussion of each of the issues raised on appeal.

I. The Exemption Issue

The Authority asserts a statutory exemption under K.S.A. 1987 Supp. 79-201a *Second*, which in material part reads:

"The following described property . . . shall be exempt from all property or ad valorem taxes levied under the laws of the state of Kansas:

. . . .

"*Second.* All property used exclusively by the state or any municipality or political subdivision of the state. All property owned or operated by the state or any municipality or political subdivision of the state which is used or is to be used for any governmental or proprietary function . . . shall be considered to be 'used exclusively' by the state, municipality or political subdivision for the purposes of this act."

The Authority contends that the property was being used for a governmental or proprietary function and therefore is to be considered as "used exclusively" within the meaning of the statute. In support of this contention, the Authority relies upon subparagraph (d) of K.S.A. 27-318, which states in material part:

" 'Public airport' . . . [shall include] . . . property needed to develop sources of revenue from nonaviation businesses at such public airport."

The Authority reasons the property was rented to nonaviation businesses to generate revenue for the financial needs of the airport and, based upon K.S.A. 27-318, this was clearly an authorized governmental or proprietary function ordained by the legislature. Because the legislature has determined it is in the public interest for cities such as Salina to acquire surplus federal property for the purpose of operation of a public airport thereon, which includes not only the runways and supporting facilities but also property needed to develop sources of revenue from nonaviation business, the Authority argues BOTA has no basis in law to deny a tax exemption.

Before specifically addressing the Authority's argument, we need to review applicable principles of law. Under Kan. Const. art. 11, § 1, all property used exclusively for governmental purposes is exempt from taxation. This exemption depends solely upon the exclusive use made of the property and not on the ownership or the character of the owner. *Topeka Cemetery Ass'n v. Schnellbacher*, 218 Kan. 39, 42, 542 P.2d 278 (1975). The legislature may exempt from taxation property other than that named in the constitution, provided, however, the exemption has a public purpose and is designed to promote the public welfare. *In re Tax Protest of Strayer*, 239 Kan. 136, 141, 716 P.2d 588 (1986). The statutory exemptions may be broader than the constitutional ones. *State ex rel. Tomasic v. City of Kansas City*, 237 Kan. 572, 701 P.2d 1314 (1985).

In *T-Bone Feeders, Inc. v. Martin*, 236 Kan. 641, 645-46, 693 P.2d 1187 (1985), controlling principles in analyzing a claim of exemption were stated to be:

"(1) Taxation is the rule; exemption is the exception. All doubts are to be resolved against exemption and in favor of taxation. [Citation omitted.]

"(2) Constitutional and statutory provisions exempting property from taxation are to be strictly construed. [Citations omitted.]

"(3) The burden of establishing exemption from taxation is on the one claiming it. [Citation omitted.]

"(4) The question is not whether or not the property is used partly or even largely for the purpose stated in the exemption provisions, but whether it is used exclusively for those purposes. [Citations omitted.]

"(5) The phrase 'used exclusively' in the constitution and statutes means that the use made of the property sought to be exempted from taxation must be only, solely, and purely for the purposes stated, and without participation in any other use. [Citation omitted.]"

The Authority clearly perceives the issue to be one of constru-

ing a statutory exemption and it urges consideration of constitutional criteria as was applied in *State ex rel. Tomasic v. City of Kansas City*, 237 Kan. at 578-82. We believe the first question to be more elementary: Does the statute authorize an exemption? We have concluded it does not and, therefore, do not find it necessary to apply constitutional criteria.

For purposes of analysis, we assume without actually deciding that the Authority's lease of the properties in question was done in furtherance of discharging a proprietary function; that is, to generate income for operation and maintenance of the airport. Nonetheless, the leased properties were not in any way used for a proprietary function of government. To the contrary, the properties were leased to strictly private corporations intent only on profits for their stockholders. The mere fact that the Authority receives rental income does not constitute "use" within the meaning of K.S.A. 1987 Supp. 79-201a *Second*. Such a construction would be inconsistent with the clear and unequivocal language of the statute. There is no public function of government being carried out upon the leased properties. To decide otherwise would compel a conclusion that the legislature intended all property owned by the State, its subdivisions, and municipalities leased to private corporations for nongovernmental purposes to be exempt from taxation. This would not only be inconsistent with the statute; it would be unconstitutional.

We note courts from other jurisdictions confronted with a like issue under similar exemption statutes have reached the same conclusion.

In *Town of Harrison v. Co. of Westchester*, 13 N.Y.2d 258, 246 N.Y.S.2d 593, 196 N.E.2d 240 (1963), a county leased two of its hangars, located on the county airport property, to private companies for their private and exclusive use. The county claimed the hangars and the properties upon which they were located were exempt. The exemption statute provided property owned by a municipality was exempt only if "held for a public use."

The court held the properties were not exempt from taxation because they were not being used for public purposes. 13 N.Y.2d at 263-64. The court observed the hangars were occupied by private corporations for their sole use and that the hangars were under the private corporations' exclusive control. The hangars were not used to provide any service to the public at large. 13

N.Y.2d at 263. The court also noted that, although revenue from the hangars helped to defray the expense of operating the public airport, this fact was not sufficient to render the use of the property public since the property itself must be devoted to a public use. 13 N.Y.2d at 264.

In *Cleveland v. Perk*, 29 Ohio St. 2d 161, 280 N.E.2d 653 (1972), the lounge bar, newsstand, gift shop, barbershop, car rentals, and parking lot on public airport property were held not to be exempt from ad valorem taxation. The Ohio Court stated:

"When . . . private enterprise is given the opportunity to occupy public property in part and make a profit, even though in so doing it serves not only the public, but the public interest and a public purpose, such part of the property loses its identity as public property and its use cannot be said to be exclusively for a public purpose." 29 Ohio St. 2d at 166.

In *Reading M. Air. Auth. v. Schuyl. V. Sch. D.*, 4 Pa. Commw. 300, Syl. ¶ 3, 286 A.2d 5 (1972), it was held that publicly owned property leased to private business, under control of private business, and unavailable to the general public was not entitled to tax exemption as public property being used for public purposes.

We agree with the reasoning applied by the courts in the above cases and conclude that the Salina Airport Authority was not entitled to a statutory exemption under K.S.A. 1987 Supp. 79-201a *Second*. The district court correctly upheld BOTA's decision denying the exemption.

II. The Investigation Issue

The Authority contends BOTA has no statutory authority to conduct investigations regarding all Authority property because the property was not the subject of a controversy brought before BOTA. The Board contends the issue is moot because the Saline County Appraiser has already complied with the order by giving BOTA a list of the Authority's property and a list of the uses being made of the property. The Board further contends that, if the issue is not moot, BOTA's broad statutory powers include the ability to ascertain whether all property has been listed and assessed or, in the alternative, properly exempted.

Courts will only decide actual controversies and if, by the lapse of time, circumstances have so changed that the court cannot render a judgment which will have an effect, the appeal will be dismissed as moot. *City of Roeland Park v. Cross*, 229

Kan. 269, 270, 623 P.2d 1332 (1981); *Board of Education v. Vinson*, 195 Kan. 666, 669, 408 P.2d 637 (1965). If, however, dismissal of an appeal would adversely affect rights vital to the parties, the appeal will be retained even though the appellate court's judgment will not be enforceable because of lapse of time or other changed circumstances. *Moore v. Smith*, 160 Kan. 167, 170, 160 P.2d 675 (1945); *Gonzales v. State*, 11 Kan. App. 2d 70, 71, 713 P.2d 489 (1986).

In *Smith v. Miller*, 213 Kan. 1, 514 P.2d 377 (1973), the plaintiff was expelled from school for assaulting another student. He appealed the expulsion alleging denial of due process. When the case reached the Supreme Court, it appeared moot because the school term for which plaintiff had been expelled was finished. The Supreme Court decided to retain the appeal, however, "since a real controversy existed and declaratory relief was sought which included construction, validity and constitutionality of statutes of statewide interest and importance." *Smith v. Miller*, 213 Kan. at 5.

By contrast, in *Gonzales v. State*, 11 Kan. App. 2d 70, the plaintiff's license was suspended for 120 days for refusal to submit to a breath test. The 120-day period had run by the time the case was appealed to the Court of Appeals. This court held the case was moot and dismissed the appeal. 11 Kan. App. 2d at 71. The court reasoned no rights which were vital to the plaintiff would be adversely affected by the dismissal. 11 Kan. App. 2d at 71.

In the present case, BOTA indicated it was concerned the Authority owned property which was not listed on county tax records and for which no exemptions had been granted. Consequently, BOTA ordered the Saline County Appraiser to make an investigation of all property owned by the Authority "for the purpose of determining whether all of the property has been the subject of an exemption order and for the purpose of allowing the Board to determine whether the use of the property is consistent with the exempt uses authorized pursuant to K.S.A. [1987 Supp.] 201a *Second*." BOTA ordered the county appraiser to submit a report showing the property owned by the Authority and the use made of each part of it. The county appraiser complied with this order in October 1986. Under these factual circumstances and based upon the reasoning in *State v. Miller*, we are persuaded

the issue is not moot. This brings us to the question of whether BOTA acted within the scope of its authority in requesting the county appraiser to prepare a report listing all Authority property and its uses.

In reviewing BOTA's actions on appeal, this court has the power to determine whether, as a matter of law, BOTA acted within the scope of its authority. *In re Tax Appeal of Horizon Tele-Communications, Inc.*, 241 Kan. 193, 197, 734 P.2d 1168 (1987).

BOTA is the paramount taxing authority in the state. *Wirt v. Esrey*, 233 Kan. 300, 314, 662 P.2d 1238 (1983). BOTA is a creature of the legislature, however, and it has only the power given it, expressly or impliedly, by the legislature. *Vaughn v. Martell*, 226 Kan. 658, 660, 603 P.2d 191 (1979). BOTA has no general or common law power—only statutory power. *Pork Motel, Corp. v. Kansas Dept. of Health & Environment*, 234 Kan. 374, 378, 673 P.2d 1126 (1983). If BOTA "attempts to exercise jurisdiction over a subject matter not conferred by the legislature, its orders with respect thereto are without authority of law and void." *Vaughn v. Martell*, 226 Kan. at 660-61.

Broadly, BOTA's statutory authority includes the power to hear appeals from the director of property valuation and the director of taxation (K.S.A. 74-2437); to act as the State Board of Equalization (K.S.A. 74-2439); to hear and decide applications for refund of protested taxes (K.S.A. 74-2439); and to review taxpayer's applications for property exemption from taxation (K.S.A. 1987 Supp. 79-213). Nothing in these or any other statutes gives BOTA the express or implied power to order a county appraiser to investigate property which is not the subject of a controversy brought before BOTA.

The authority to investigate the taxability of property rests with other governmental entities. For example, the assessing officers of each county have a duty to list, and value for assessment, all property located in a county for which no claim for exemption has been filed. K.S.A. 79-210. County appraisers have the power to investigate, identify, list, and value property not listed, or which they believe is not adequately listed. K.S.A. 79-1461. The director of property valuation (DPV), not BOTA, has general supervision of the county assessors in the performance of their duties and regulates their performance. K.S.A.

79-1401; K.S.A. 1987 Supp. 79-1412a; K.S.A. 1987 Supp. 79-1445. The DPV also has "general supervision of the system of taxation throughout the state, [and has the] power to make a thorough investigation thereof." K.S.A. 79-1402; see K.S.A. 79-1404. Finally, under K.S.A. 79-417, the county clerk must place upon the tax rolls any lands or improvements located in a county which have not been assessed and which have escaped taxation.

Nothing gives BOTA the power to investigate properties which are not the subject of a controversy brought before it. Rather, the legislature has given county assessors, county appraisers, and the DPV the investigatory powers. These persons have the statutory duty and authority to determine whether property has been properly listed and assessed. Since no statute, expressly or impliedly, gives BOTA power to investigate property which is not the subject of a dispute before it, its action in the present case ordering the county appraiser to investigate all the Authority property is void. The district court erred in its determination that this issue was moot.

In summary, we conclude that the Salina Airport Authority was not entitled to a statutory exemption under K.S.A. 1987 Supp. 79-201a *Second* and that BOTA exceeded its statutory authority in ordering the Saline County appraiser to undertake an investigation.

Affirmed in part and reversed in part.