■ In the Matter of COUNTY OF CLINTON, Respondent, v GARY A. DROLLETTE, as Assessor of the Town of Schuyler Falls, et al., Appellants. [775 NYS2d 426]—

Crew III, J. Appeal from a judgment of the Supreme Court (Dawson, J.), entered June 16, 2003 in Clinton County, which, inter alia, granted petitioner's application, in a proceeding pursuant to RPTL article 7, to declare petitioner's landfill tax exempt.

Prior to 1996, petitioner owned and operated a public solid waste landfill in the Town of Schuyler Falls, Clinton County. Over time, petitioner's efforts to oversee the landfill's daily operations proved to be economically disastrous to petitioner and its residents, resulting in the accumulation of approximately $17 million in debt. This dire circumstance prompted petitioner to retain KPMG Peat Marwick to analyze the facility's operations and recommend a fiscally viable alternative to petitioner's continued operation thereof.

Ultimately, it became apparent that the only solution was for petitioner to privatize the facility and, to that end, petitioner executed a 25-year lease agreement with Casella Waste Systems, Inc., a private corporation. Pursuant to the terms of such agreement, petitioner retained ownership of the landfill but Casella bore responsibility for the daily operation and management of the facility. Under Casella's management,[1] the landfill became a profitable enterprise and, as permitted by the lease, its operations were expanded to include the acceptance of solid waste from outside petitioner's borders.[2] In time, the lease agreement was amended to permit Casella to increase the annual maximum tonnage that the landfill could accept from 125,000 tons to 175,000 tons, for which Casella paid petitioner a "host fee."

Thereafter, in May 2002, respondent Gary A. Drollette, the assessor for the Town of Schuyler Falls, placed the landfill, which previously enjoyed tax exempt status, on the Town's tax assessment rolls. Following an unsuccessful appearance before respondent Board of Assessment Review of the Town of Schuyler Falls, petitioner commenced the instant proceeding pursuant to RPTL article 7 seeking to have the landfill declared tax exempt based upon it qualifying as a "public use" under RPTL 406 (1). Supreme Court, inter alia, granted petitioner's subsequent motion for summary judgment in this regard, finding that the landfill indeed constituted a public use within the meaning of the statute. This appeal by respondents ensued.

We affirm. RPTL 406 (1) provides, in relevant part, that "[r]eal property owned by a municipal corporation within its corporate limits held for a public use shall be exempt from taxation." As applied to the matter before us, the issue distills to whether petitioner's landfill, although now operated by a private

1. At some point subsequent to the execution of the lease agreement, Casella delegated operation of the landfill to its subsidiary, New England Waste Services of New York, Inc. For purposes of this decision, however, all references to the landfill's operator will be to Casella.

2. During the period of time that petitioner operated the facility, it did not accept waste from nonresidents.

entity, nonetheless serves a public use. "Although what comprises 'a public use' within the meaning of [RPTL 406 (1)] 'has never been defined with exactitude' and 'must necessarily depend upon the peculiar circumstances of each case', it has been said . . . that '[h]eld for a public use, in this connection, means that the property should be occupied, employed, or availed of, by and for the benefit of the community at large, and implies a possession, occupation and enjoyment by the public, or by public agencies' " (*Town of Harrison v County of Westchester*, 13 NY2d 258, 263 [1963], quoting *County of Herkimer v Village of Herkimer*, 251 App Div 126, 128 [1937], *affd* 279 NY 560 [1939]; *see Matter of County Tennis Club of Westchester v Office of Assessor for Vil. of Scarsdale*, 261 AD2d 616, 617 [1999]; *Matter of County of Erie v Kerr*, 49 AD2d 174, 178-179 [1975], *lv denied* 38 NY2d 711 [1976]). In this regard, neither the method chosen by the municipal corporation for the operation of the facility at issue (*cf. Matter of Pace Coll. v Boyland*, 4 NY2d 528, 533 [1958]) nor the fact that the municipal corporation receives much-needed revenue from the operation of such facility (*see Town of Harrison v County of Westchester*, supra at 264) is determinative. Specifically, "[t]he fact that a private business derives a benefit or that [a] county has leased the property to a private party does not by itself defeat the exemption" (*Matter of County of Erie v Kerr*, supra at 179 [citation omitted]). Rather, it is the purpose and use of the property that is controlling (*see id.* at 179). Thus, "in order for municipally owned property to be exempt from taxation because of its 'public use', that use must be one that enhances the health, education, safety, or welfare of *the residents of the municipality*" (*Fallica v Town of Brookhaven*, 69 AD2d 579, 592 [1979], *mod* 52 NY2d 794 [1980]). As the Court in *Fallica* observed, "[e]xemption from taxation is the price paid by the municipality for the assumption of a portion of the functions of the municipality . . . . However, increasing the tax burden on the *paying* taxpayers cannot be legally justified where the latter do not themselves obtain benefit from the use of the tax-exempt property" (*id.* at 592 ).

Applying these principles to the matter before us, it is readily apparent that petitioner's landfill continues to serve a public use and, hence, is entitled to tax exempt status under RPTL 406 (1). The record makes plain that despite the privatization of the landfill, petitioner's facility nonetheless continues to fulfill the significant public purpose for which it originally was intended—namely, to provide petitioner and its residents with efficient, economical and environmentally sound solid waste disposal. In this regard, the percentage of the waste received from

residents and nonresidents is irrelevant, as is the amount or percentage of host fees paid to petitioner. As noted previously, the methodology and/or profit motive is not determinative; it is the purpose and use of the property that controls. Although Casella undeniably is responsible for the day-to-day operation and management of the landfill, respondents fall far short of demonstrating that the landfill has been committed to "the exclusive control of private parties . . . solely for their private purposes, rather than in a manner benefiting the community at large" (*Town of Harrison v County of Westchester*, 13 NY2d 258, 266 [1963], *supra*). To the contrary, the various agreements between petitioner and Casella reflect that Casella is responsible for operating petitioner's recycling program and the convenience stations for the benefit of petitioner's residents, and petitioner retains the authority to, inter alia, inspect the waste brought to the landfill. Additionally, while paragraph 13 (B) (1) of the 1996 lease agreement, which governs the acceptance of waste at the "Lined Landfill," permits Casella to recycle or dispose of "Acceptable Waste generated outside Clinton County," that same paragraph also provides that, in case of conflict, "Acceptable County Waste . . . shall have priority over Acceptable Waste originating outside Clinton County."

In short, the record as a whole simply does not support a finding that the underlying use of petitioner's facility primarily benefits Casella or is only incidentally related to the public purpose at issue (*see Matter of County of Erie v Kerr*, 49 AD2d 174, 179 [1975], *supra*). Accordingly, Supreme Court's judgment granting petitioner's application and affording petitioner's landfill tax exempt status is affirmed.

Mercure, J.P., Carpinello and Rose, JJ., concur. Ordered that the judgment is affirmed, without costs.